102 So.2d 660 (1958)
Mrs. B.M. ETHEREDGE et al., Appellants,
v.
E.H. BARROW, etc., Appellee.
No. 65.
District Court of Appeal of Florida. Second District.
May 9, 1958.
*661 Treadwell & Treadwell, Arcadia, and Howard G. Livingston, Sebring, for appellants.
C.A. Boswell, Bartow, for appellee.
SMITH, FRANK A., Associate Judge.
This is an appeal from a final decree, dated July 12, 1957, entered in a chancery proceedings brought by Mrs. B.M. Etheredge, and James T. Etheredge, individually and as surviving directors of DeSoto City Groves Company, a dissolved Florida corporation, against E.H. Barrow, sometimes known as Emily H. Barrow, individually and as trustee for the stockholders of the above named dissolved corporation. The relief sought by Plaintiffs was to have an accounting of certain money paid by defendant for taxes on land allegedly owned by the said corporation, to have a certain tax deed declared void upon payment, by Plaintiffs, of a pro rata share of said taxes, and to declare title to the land involved vested in all the parties as trustees for the stockholders of the corporation. From a decree in favor of Defendant, Plaintiffs have appealed. The parties are referred to herein as they stood before the chancellor.
The parties to this suit are the former sole stockholders and directors of DeSoto City Groves Company, a corporation which was dissolved in July, 1942. They were such stockholders and directors at the time of the dissolution and the Plaintiff B.M. Etheredge and the Defendant had been stockholders and directors at all times during which the events leading up to this suit transpired. Up to the time of death David C. Barrow, husband of the defendant and B.M. Etheredge, husband of Plaintiff were also stockholders, directors and officers as well and prior to the time of death of Mr. B.M. Etheredge Plaintiff James T. Etheredge had an interest as a stockholder and after the death of his father, B.M. Etheredge, said James T. Etheredge became a director and officer.
The corporation had been in financial difficulty for several years and had failed to pay taxes assessed against its real estate in Highlands County. In 1938 while the husbands were still alive and running the business at a directors meeting a resolution hereinafter set out in full was adopted in regard to payment of taxes against the corporation's lands. A little more than two years later defendant obtained a tax deed to one hundred and sixty acres of land known as the Nichols tract, went into possession of same, cleared, planted and cultivated an orange grove (maybe lime and lemon, which variety of citrus being immaterial) and claimed ownership of the entire tract under such tax title. This suit attacks such deed as a conveyance except the ten acre grove portion, as a fraud upon plaintiffs who were the owners of stock in said corporation.
The resolution adopted reads as follows, to-wit:
"It was moved and carried that since the company has been inactive for some years and has not had any funds in the treasury, and since Mrs. Emily H. Barrow and Mrs. B.M. Etheredge put up large sums of money to pay taxes during the past few years and since it is necessary that the company adjust and pay additional taxes in the near future, be it resolved that all sums of money previously or hereafter advanced for and on behalf of the company by Mrs. Emily H. Barrow and Mrs. B.M. Etheredge, be and the same is hereby declared to be a debt or debts of the company, drawing interest from the dates so advanced at the rate of eight percent per annum, and that the executive officers of this corporation are hereby authorized to give the company's note or notes therefor, if and when requested.

*662 "There being no further business, the meeting adjourned. All directors were present."
Plaintiffs claim that the purchase of the outstanding tax certificates against the land constituted payment, so that defendant's proceeding to apply for a tax deed based thereon, having the notice advertised and her bidding highest and obtaining a deed was ineffective to convey any title to her. The first point to be determined is the legal effect of such acquisition of tax certificate and subsequently a deed based thereon.
The chancellor found in his decree that there was no fraud committed by defendant and that plaintiffs had knowledge of and consented to her acquiring the certificate and deed and had for over fifteen years acquiesced. His decree adjudged defendant to be the owner of, entitled to the possession of the land and restrained plaintiffs from asserting any adverse claim to the land.
Plaintiffs claim that by the adoption of said resolution the directors adopted a corporate policy in regard to payment of the taxes. Defendant has challenged their interpretation of same and contends that it did not apply to payment or advances in the future. While the resolution purports to cover advances for payment of taxes thereafter as well as those theretofore paid by monies advanced by Defendant and Plaintiff, Mrs. B.M. Etheredge, the decree made no specific mention of said resolution or construction thereof and we do not find it necessary that this court should make any complete determination as to how same should be construed. Of course, due consideration must be given to such resolution as well as all other circumstances connected with the transaction.
As a general rule a director or officer of a corporation has no right to purchase the corporate property at a judicial or public sale and if he does so the sale is voidable. In a broad sense the officers and directors are agents of the corporation and occupy a fiduciary or quasifiduciary relation to the corporation and its stockholders. 13 Am.Jur. pp. 948 and 960.
While not a technical trustee, a director occupies a position of trust and is frequently termed a trustee, his duties being analogous to those of a trustee toward the cestui que trust, and imposing on him the obligation to act with fidelity and good faith, subordinating his personal interest to those of the corporation. 19 C.J.S., Corporations § 761, p. 103, and to the same effect see Volume 10, Encyclopedic Digest of Florida, page 546, in which numerous Florida cases are digested, including that of Citizens State Bank v. Adams, 140 Fla. 578, 193 So. 281, stating the rule that a director of a corporation occupies a fiduciary relation to the corporation and will not be allowed, in equity, to act in hostility to the interest of the corporation for his own benefit.
Under the above authorities the deed would be voidable, but there were other facts which we find take this transaction out of and remove it from their effect.
In the late Summer or Fall of 1940 about two years subsequent to the resolution the parties and David C. Barrow got together in a meeting in the Barrow home and fully discussed the tax situation with respect to this land. The taxes were delinquent from 1928 to date, nothing having been paid thereon and tax certificates being outstanding as early as 1929; Whitmire, the holder of this early certificate was threatening to "foreclose" and Mr. Barrow had gone to see Whitmire about it and the parties discussed the fact that the corporation had no money, what was going to take place and that it was just going to be a loss; that Mr. Barrow had put so much money into it already, which Plaintiffs knew and that he should go ahead and clear it up for himself. They said they did not have the money and for him to go ahead and get the property for himself. The testimony abundantly supports *663 the finding of the chancellor to the effect that Plaintiffs consented to Barrow's getting the deed.
The meeting in question was not a formal meeting of the directors and the minutes contain no mention of it, but those present and participating in the discussion constituted all of the directors and holders of all stock of the corporation. The directors were not purporting to act as a board, which is a general requirement for the exercise of authority by and as directors, but the law recognizes an exception to the rule in the case of closed corporations, such as the evidence shows this corporation to have been.
"The doctrine of permitting closed corporations to act informally is recognized as an exception to the general rule that directors must act as a board at duly convened meeting. In fact it is well known that corporations which include only a few stockholders do not often act with as much formality as larger companies. This is especially so where the members of the board, actually and directly, personally conduct the business."
"If the directors own all of the stock, a conveyance, mortgage or contract authorized by them when not assembled at a meeting is valid, and * * *. This rule has been applied to the execution of a lease without formal authorization at meeting of board of directors." 2 Fletcher Cyclopedia of Corporations, #394.1 and #395.
While technically it was not a meeting of a board of directors, yet for all practical purposes it should be regarded as the action of the directors and accorded such legal effect. The matter was no surprise to Plaintiffs, it being their business to know and the evidence showing they did know about the taxes being unpaid and that there was no money available to pay same except as advanced by the parties out of their personal funds. Mrs. Etheredge testified she could not imagine why Mr. Whitmire had held the certificate so long and had not bought the deed. The Plaintiffs asserted their lack of any funds to pay the taxes. It cannot be seen that there was any disadvantage to the corporation that the matter should have been considered and acted upon at that time and place and in the manner as shown and that such action be held to be the action of the corporation.
About two months afterward the certificate was purchased from the holder, Mr. Whitmire, and was assigned to the Defendant. It makes no difference that the certificate was taken in the name of Defendant instead of her husband, Mr. Barrow, pursuant to the discussion in the meeting. Both were directors and stockholders, they together owning one-half of the stock and the Plaintiffs owning the other half of same. The record indicates that as between the Barrows, Defendant was the chief party in interest and that her husband's connection and participation in the affairs was mostly in her behalf and for her benefit. It is common knowledge that man and wife often mix their business interests together and deal with them in the name of the one, the other or both and with no particular pattern or consistency. Frequent instances are seen in which the husband speaks of and deals with the wife's property and interests as his own and again he may refer to his property or interests as his wife's. It is only occasionally that one makes the declaration that `what's my wife's is ours but what's mine is my own' and whenever it is so stated it is usually spoken in jest.
Defendant sought to introduce in evidence a copy of letter purporting to have been written by Mr. Barrow to Plaintiff James T. Etheredge, in September of 1941 explaining the transaction but the chancellor in his decree has made no mention of such letter. Plaintiffs objected to the introduction of the letter and the *664 Court finds that it was not admissible in evidence and has not considered same. Mr. Etheredge denied any knowledge of the letter and did not think he had ever received it and there was no proof that same had been mailed to him. Perhaps if this letter could be received it would throw much light on the transaction, but it is not admissible and cannot be considered.
The record fails to show that Defendant used any deception in obtaining the tax deed, and while the Plaintiffs may not have known at the particular time that she was procuring same, they did know and had expressed their willingness that Mr. Barrow should proceed to procure the tax title. It was about two months after the parties had the understanding to that effect that he obtained the tax certificate, had the sale advertised and bid it in in Defendant's name and the record does not show but what all of the proceedings were regular and that a good title vested in the Defendant.
The decree of the eminent chancellor is affirmed.
KANNER, C.J., and SHANNON, J., concur.